UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHABANI STEWART, for herself and all others similarly situated,<br><br>      Plaintiff,<br><br>-against-<br><br>EARLY WARNING SERVICES, LLC,<br><br>      Defendant. | Index 2:18-cv-03277(CCC)(SCM)<br><br>FIRST AMENDED COMPLAINT AND JURY DEMAND |

Plaintiff alleges:

## NATURE OF THIS ACTION

1. Defendant violated the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq*. (the "FCRA").

## JURISDICTION AND VENUE

2. Plaintiff is a natural person and resident of this judicial district.

3. Defendant regularly engages in business in the state of New Jersey.

4. Defendant has appeared to litigate this action in this court.

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331; 15 U.S.C. §1681p; and 28 U.S.C. §§ 2201-2.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff is a natural person and a resident of Patterson, New Jersey.

8. Early Warning Services, LLC, ("EWS") is a limited liability company organized under the laws of Delaware with a principal place of business in Scottsdale, Arizona.

1

9. EWS is a "consumer reporting agency" as defined under 15 U.S.C. §1681(f).

10. EWS assembles information on consumers, specifically consumers' bank account history and usage, for the purpose of preparing and sharing consumer reports on those consumers.

11. EWS provides a partial description of its business, and prominently describes itself as a consumer reporting agency, on its website on the Internet at:

    https://www.earlywarning.com/consumer-information.html

## FACTS

12. The FCRA, 15 USC § 1681g(a), provides: "Every consumer reporting agency shall, upon request… clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request."

13. EWS maintained a file on Plaintiff.

14. Prior to May 2017, Plaintiff sought to open a bank account at several banks.

15. Plaintiff was repeatedly denied the ability to open a bank account.

16. Plaintiff was repeatedly told she could not open a bank account due to negative reporting on her by one or more consumer reporting agencies.

17. In February 2016, Plaintiff sought to open a bank account at Credit One Bank.

18. Credit One Bank obtained information on Plaintiff from EWS, for the purpose of evaluating Plaintiff's eligibility to open a bank account.

19. Credit One Bank denied Plaintiff the ability to open a bank account.

20. Upon information and belief, Credit One Bank denied Plaintiff the ability to open a bank account based upon information it obtained from EWS.

21. In May 2017, Plaintiff requested the contents of her file from EWS.

22. EWS did not comply with Plaintiff's request.

23. In violation of 15 U.S.C. § 1681g(a), upon Plaintiff's request, EWS failed to clearly and accurately disclose to Plaintiff the complete contents of its file on her.

*"Checking Account Fraud"*

24. EWS had a record of a contribution from Bank of America concerning Plaintiff for committing, "Checking Account Fraud."

25. Upon information and belief, EWS maintained this record for the purpose of preparing consumer reports on Plaintiff.

26. Upon information and belief, EWS maintained this record for the purpose of including such information in consumer reports on Plaintiff.

27. Upon information and belief, EWS informed Credit One Bank in or around February 2016 that Bank of America had contributed a record to EWS concerning Plaintiff for committing conduct, attempted conduct, or possible conduct, described wholly or partly by the word "fraud" or a word derived from the word "fraud."

28. EWS did not disclose any record of "Checking Account Fraud," nor any record of fraud, to Plaintiff in response to Plaintiff's request for the contents of her file.

29. Rather, EWS disclosed to Plaintiff a record of a contribution from Bank of America only for, "Transacting (or attempting to transact) with an account in an unauthorized or prohibited manner."

30. EWS scrubbed the term "fraud" from its disclosure to Plaintiff.

31. Plaintiff was misled by EWS's disclosure. Plaintiff specifically wanted to know if EWS had a record of her committing "fraud," in connection with her Bank of America account. EWS had such a record, but failed to disclose it.

32. The record of fraud concerning Plaintiff's Bank of America account was false.

33. Plaintiff could not reasonably expect to succeed in disputing her account was used in an "unauthorized or prohibited" manner, but would vigorously dispute she committed fraud.

34. Plaintiff was aware she had briefly overdrawn her Bank of America account on or about August 9, 2013, but incoming funds on August 15, 2013 covered the overdraft. Bank of America suffered no loss from Plaintiff's use of her account.

35. Upon information and belief, in connection with the above events Bank of America closed Plaintiff's account, wrote Plaintiff that negative information on her may be reported to EWS, and Bank of America told Plaintiff by phone she had used her account improperly.

36. EWS instructs consumers such as Plaintiff, in disputing the contents of their file, to include, "The detailed reason for the dispute (i.e., why the information is inaccurate or incomplete)." Plaintiff could not provide a "detailed reason" for disputing a "fraud" record which was not disclosed to her.

37. Plaintiff is similarly situated to other consumers. Just like Plaintiff, consumers who bounce checks, or overdraw from an account, may believe they used an account in an "unauthorized or prohibited manner," and would accordingly not dispute such a record, but such consumers might vigorously dispute they committed "fraud," if such a record were disclosed to them.

*"Summary Disclosure"*

38. Prior to March 2016, Plaintiff called EWS for the purpose of obtaining a copy of EWS's file on her. Plaintiff spoke to a representative from EWS, and Plaintiff submitted a request for a copy of her file, consistent with the instructions EWS provided to her by phone.

39. On or about March 22, 2016, EWS purported to respond to Plaintiff's request, by sending Plaintiff a "Summary File Disclosure," but not the complete contents of its file on Plaintiff.

4

40. As alleged above, in May 2017, Plaintiff again submitted a request for EWS's file on her. Plaintiff submitted this request to EWS on its standard form for requesting the contents of a consumer's file, through EWS's internet portal, as EWS instructs on its website.

41. Above Plaintiff's signature on the form, the following text appears: "Pursuant to the Fair Credit Reporting Act and other applicable laws, I request that Early Warning provide to me a copy of the information in its files pertaining to me as specified in this Form."

42. In response to Plaintiff's May 2017 request, EWS did not send Plaintiff the complete contents of her file, but rather, a "Summary File Disclosure."

43. The Summary File Disclosure instructed Plaintiff to call EWS by phone to obtain the complete contents of her file. Plaintiff had already spoken to EWS by phone, as alleged above, for the purpose of obtaining her file. EWS's internal records referred to Plaintiff's May 2017 request for her file as her "2nd Request," acknowledging the previous March 2016 request submitted by Plaintiff.

44. Moreover, the phone number EWS instructed Plaintiff to call answers with an automated message, directing consumers to request their credit reports through EWS's website on the Internet, as Plaintiff had already done.

45. The Summary File Disclosure EWS provided Plaintiff, in response to her May 2017 request, omitted information on Plaintiff which would have been provided to her in a complete file disclosure, including the designated "status" of her bank accounts on certain dates, and "Stop Payment" information regarding one or more bank accounts.

46. The Summary File Disclosure EWS provided Plaintiff, in response to her May 2017 request, prominently stated it is a summary of Plaintiff's file, and not Plaintiff's complete file.

47. The Summary File Disclosure EWS sent Plaintiff in May 2017 does not explain what information is omitted from the "summary" disclosure, that is, what types of information would be included on a complete file disclosure.

48. Plaintiff did not know, and could not know by looking at the May 2017 Summary File Disclosure, what information was being withheld from disclosure to her.

49. In reviewing her EWS Summary File Disclosure in May 2017, Plaintiff wanted to know, but could not know, if a complete file disclosure would include additional information on the alleged "unauthorized or prohibited" use of her Bank of America account.

50. In reviewing her EWS Summary File Disclosure in May 2017, Plaintiff wanted to know, but could not know, if a complete file disclosure would include additional information concerning the identity of banks which obtained her EWS file in evaluating Plaintiff's eligibility to open a checking account.

51. In reviewing her EWS Summary File Disclosure in May 2017, Plaintiff wanted to know, but could not know, if a complete file disclosure would include additional information concerning her use of her Bank of America accounts which could be used in her favor in preparing a dispute of the alleged "unauthorized or prohibited" use of her Bank of America bank account.

*Willfulness of Violations*

52. EWS's violations of the FCRA alleged herein were committed willfully, or with reckless disregard to the law.

53. EWS's conduct violates the express terms of 15 USC § 1681g(a). EWS's failure to clearly and accurately disclose to Plaintiff and class members the complete contents of their files, upon request, is inexplicable.

54. EWS is well aware of its obligation under the FCRA to clearly and accurately provide any consumer the complete contents of his or her file upon request. EWS's standard request form, which Plaintiff filled out and provided to EWS in this case, refers to this obligation, and EWS further prominently states on its website that consumers can obtain their EWS reports upon request.

55. It is common knowledge to any consumer reporting agency, particularly a large and sophisticated entity such as EWS, that consumers must be provided the complete and accurate contents of their files upon request.

56. EWS's disclosure to Plaintiff and to class members of "unauthorized or prohibited" account use, instead of disclosing "fraud," was made pursuant to a deliberate policy decision by EWS.

57. EWS's disclosure to Plaintiff and class members of Summary File Disclosures, instead of complete file disclosures, was made pursuant to a deliberate policy decision by EWS.

58. EWS's failure to disclose a record of "fraud" is egregious, and there is no explanation for such conduct other than an intentional policy, on the part of EWS, to shield from consumers the contents of their own files.

59. EWS's arrogating to itself the decision of what information to include, and what information to omit, in a Summary File Disclosure contradicts the explicit requirement of the FCRA that disclosures of credit files include all information in the consumer's file. It is not for EWS to decide what information to include in such disclosures.

60. The consumer, reviewing the Summary File Disclosure, cannot even know what information is missing, and is left uninformed as to the contents of his or her complete file, frustrating a basic objective of the FCRA. This should be obvious to EWS.

## COUNT I
## 15 U.S.C. § 1681g(a)
## FAILURE TO DISCLOSE "FRAUD" RECORD

61. All preceding paragraphs are re-alleged.

62. Count I is brought by Plaintiff for herself and the Count I Class.

63. As used in Count I, the term "Fraud" means conduct, attempted conduct, or possible conduct by a consumer described in EWS's file on such consumer wholly or partly with the word "fraud" or a word derived from "fraud."

64. Class Definition: The Count I class consists of:

    a) All consumers in the United States who, in the two years prior to the filing of this action and through the date of class certification,

    b) requested from EWS the contents of his or her file maintained by EWS,

    c) where EWS had, in such consumer's file, at least one record of Fraud (as defined above),

    d) where EWS, in response to such request, provided a file disclosure to such consumer but did not disclose such record of Fraud (as defined above).

Excluded from the Count I class are persons with a record of a match in the Internal Fraud Prevention Service.

65. Plaintiff preserves the right to amend the class definition, or to seek certification of alternative classes or sub-classes.

66. Plaintiff requested from EWS the contents of its file on her in or around May 2017.

67. At the time Plaintiff requested her file from EWS, a record of a contribution from Bank of America for Checking Account Fraud appeared in Plaintiff's file maintained by EWS.

68. EWS failed to disclose this record to Plaintiff.

69. EWS's failed, in response to Plaintiff's request, to clearly and accurately disclose the complete contents of its file on Plaintiff.

70. EWS violated Plaintiff's rights under section 1681g(a) of the FCRA.

71. As a consequence thereof, EWS deprived Plaintiff of information to which she was entitled, and which Plaintiff reasonably wanted to know.

72. Each member of the Count I Class requested the contents of his or her file from EWS.

73. EWS maintained, for each member of the Count I Class, at least one record of Fraud (as defined above).

74. EWS failed, in response to the request of each member of the Count I Class, to clearly and accurately disclose such record.

75. EWS violated class members' rights under section 1681g(a) of the FCRA to obtain, upon request, a clear and accurate disclosure of the complete contents of their files maintained by EWS.

76. The Count I Class meets the requirements of Fed. R. Civ. P. 23 to maintain a class action. Named Plaintiff is adequate to represent the classes alleged herein, and has retained competent counsel to do so.

77. **Numerosity**.  Upon information and belief, joinder of class claims is impossible or impractical.  EWS operates on a mass scale maintaining files on millions of people in the United States, making it highly likely the class includes hundreds or thousands of individuals.

78. **Ascertainable**.  The class is ascertainable.  EWS maintains records of all consumer requests for file disclosures, the dates of such requests, their contents, and its responses to such requests.

79. **Typicality**. Named Plaintiff's claims are typical of those of class members. Plaintiff's claims and class members' claims are all asserted under 15 USC § 1681g(a), alleging EWS's failure to clearly and accurately provide, upon request, the complete contents of its files on such consumers. EWS's file disclosures to consumers are made pursuant to uniform policies and practices, such that EWS's violations of the law are materially similar as to all class members.

80. **Predominance**. Common questions of law and fact arise with respect to all class members, and predominate the class action. These question include whether EWS violated the FCRA by failing to clearly and accurately provide class members, upon their request, the contents of their files maintained by EWS, specifically records of "fraud" maintained by EWS, and whether any violations of the FCRA committed by EWS were committed willfully.

81. **Superiority**. A class action is a superior method of adjudicating the claims alleged herein. Many class members are unaware of the violations of law perpetrated against them, and statutory and actual damages to which class members are entitled are such that retaining counsel and litigating claims individually would prove overly burdensome on parties, counsel and the courts. Moreover, individual actions litigating the claims alleged herein could lead to inconsistent results

82. As to named Plaintiff and each member of the Count I Class, EWS violated section 1681g(a) of the FCRA, for which it is liable.

## COUNT II
## 15 U.S.C. § 1681g(a)
## "SUMMARY FILE DISCLOSURES"

83. All preceding paragraphs are re-alleged.

84. Plaintiff brings Count II for herself and the Count II Class.

85. **Class Definition**: The Count II class consists of:

    a) All consumers in the United States who, in the two years prior to the filing of this action and through the date of class certification,

    b) requested from EWS the contents of their file maintained by EWS,

    c) where in response thereto, EWS provided to such consumer a disclosure titled "Summary File Disclosure."

    Excluded from the Count II class are persons with a record of a match in the Internal Fraud Prevention Service.

86. Plaintiff preserves the right to amend the class definition, or to seek certification of alternative classes or sub-classes.

87. Plaintiff requested from EWS the contents of its file on her in or around May 2017.

88. EWS provided, in response thereto, a document titled a "Summary File Disclosure."

89. EWS failed to disclose to Plaintiff what information was in her complete EWS file that was missing from her Summary File Disclosure.

90. EWS's disclosure to plaintiff was not complete and was not clear.

91. Plaintiff was confused by EWS's defective disclosure to her. As alleged more fully above, Plaintiff did not know what information would have been provided in a complete file disclosure, but was withheld in the Summary File Disclosure.

92. Each member of the Count II Class requested from EWS the contents of its file on him or her.

93. EWS provided to each such consumer, in response thereto, a document titled a "Summary File Disclosure."

94. Each such disclosure violated 15 USC § 1681g(a), which required EWS to "clearly and accurately" disclose the complete contents of its files on class members.

95. EWS's file disclosures to Countn II Class members were not "clear," in violation of 15 USC § 1681g(a).  EWS indicated to each member of the Count II Class, to whom it provided a "Summary File Disclosure," that additional information was being withheld, but failed to disclose what information that might be.

96. Moreover, EWS's Summary File Disclosures were not complete, or were not accurate:

    (a) For each member of the Count II Class whose Summary File Disclosure was missing information which would have been provided in a complete file disclosure, EWS's Summary File Disclosure to such consumer was not complete.

    (b) For each member of the Count II Class whose Summary File Disclosure in fact contained all the information which would have been provided in a complete file disclosure, EWS's disclosure to such consumer was not accurate.  EWS disclosed to such consumers that they were receiving a "summary," when in fact the disclosure was complete.

97. The Count II Class meets the requirements of Fed. R. Civ. P. 23 to maintain a class action. Named Plaintiff is adequate to represent the Count II Class, and has retained competent counsel to do so.

98. **Numerosity**.  Upon information and belief, joinder of class claims is impossible or impractical.  EWS operates on a mass scale maintaining files on millions of people in the United States, making it highly likely the class includes hundreds or thousands of individuals.

99. **Ascertainable**. The Count II class is ascertainable. EWS maintains records of all requests for files it maintains on consumers, the dates of such requests, their contents, and its responses to such requests.

100. **Typicality**. Named Plaintiff's claims are typical of those of class members. Plaintiff's claims and class members' claims are all asserted under 15 USC § 1681g(a), alleging EWS failed to clearly and accurately provide, upon request, the complete contents of its files on such consumers. EWS's file disclosures to consumers are made pursuant to uniform policies and practices, such that EWS's violations of the law are materially similar as to all class members.

101. **Predominance**. Common questions of law and fact arise with respect to all class members, and predominate the class action. These question include whether EWS's Summary File Disclosures violated the FCRA by failing to clearly and accurately disclose to class members the contents of their files maintained by EWS, and whether any violations of the FCRA committed by EWS were committed willfully.

102. **Superiority**. A class action is a superior method of adjudicating the claims alleged herein. Many class members are unaware of the violations of law perpetrated against them, and statutory and actual damages to which class members are entitled are such that retaining counsel and litigating claims individually would prove overly burdensome on parties, counsel and the courts. Moreover, individual actions litigating the claims alleged herein could lead to inconsistent results

103. As to named Plaintiff and each member of the Count II Class, EWS violated section 1681g(a) of the FCRA, for which it is liable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff for herself and the classes alleged herein prays for relief as follows:

(a) An order certifying the proposed classes herein alleged under Federal Rule of Civil Procedure 23 and appointing Plaintiff and her undersigned counsel to represent same;

(b) Statutory damages pursuant to 15 U.S.C. § 1681n;

(c) Punitive damages;

(d) Attorneys' fees, expenses and costs of this action;

(e) A declaration that Defendants' conduct complained of herein is unlawful, and equitable relief sufficient to remedy the same;

(f) The creation of a common fund available to provide notice of and remedy Defendant's unlawful conduct;

(g) Interest as allowed by law; and

(h) All such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.


Dated: November 20, 2018
       New York, New York


                                                                **POSNER LAW PLLC**

                                                                *s/ Gabriel Posner, Esq.*
                                                                NJ Bar ID 137312015
270 Madison Avenue, Suite 1203
New York, New York 10016
Phone: (646) 546-5022
Email: gabe@PosnerLawPLLC.com
*Counsel for Plaintiff*

## **LOCAL RULE 11.2 CERTIFICATION**

    I, Gabriel Posner, Esq. hereby certify to my own knowledge and based upon information available to me at my office, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

Dated: November 20, 2018

<em>s/ Gabriel Posner, Esq.</em>