## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHABANI STEWART, for herself and all others similarly situated, | Civil Case No. 2:18-cv-03277-CCC-SCM |
| Plaintiffs, | |
| v. | |
| EARLY WARNING SERVICES, LLC | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Gabriel Posner, Esq.
POSNER LAW PLLC
270 Madison Avenue, Suite 1203
New York, New York
Phone: 646-546-5022
Email: gabe@PosnerLawPLLC.com
*Attorney for Plaintiff and*
*Proposed Class Counsel*

## Table of Contents

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    SUMMARY OF THE SETTLEMENT AND PRELIMINARY APPROVAL . . . . . . 3

        1.   *The Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2.   *The Classes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        3.   *Benefits Under the Settlement Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        4.   *The Limited Scope of the Release* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        5.   *Settlement Administrator* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.     NOTICE TO CLASS MEMBERS AND CAFA NOTICE . . . . . . . . . . . . . . . . . . . 9

V.      THE SETTLEMENT MEETS THE REQUIREMENTS OF
        RULE 23(a) AND RULE 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.     THE SETTLEMENT IS FAIR AND REASONABLE
        UNDER FRCP 23(e) AND UNDER *GIRSH v. JEPSON* . . . . . . . . . . . . . . . . . . . . 16

        1.   *The Settlement Meets the Requirements of Rule 23(e)* . . . . . . . . . . . . . . . . .16

        2.   *The Settlement Meets the Requirements of Girsh v. Jepson* . . . . . . . . . . . . . . 19

VII.    CLASS MEMBER OBJECTIONS
        SHOULD NOT PREVENT FINAL APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . 24

        1.   *Objections Submitted to the Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        2.   *Objections Received by Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VIII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## Table of Authorities

### Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Beaudry v. Telecheck Services., Inc.*, 579 F.3d 702 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 22

*Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 22

*Byrd v. Aaron's Inc.*,784 F.3d 154 (3d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re: Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Cortez v. Trans Union LLC*, 617 F.3d 688 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re General Motors Pick-Up Truck
Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) . . . . . . . . . . . . . . . . 12

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-23

*In re: Google Inc. Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019) . . . . . . . . . . . .. . .16, 18

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312 (3d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Nat'l Football League Players
Concussion Injury Litig.*, No. 15-2206, 2016 WL 1552205 (3d Cir. Apr. 18, 2016) . . . . . . . . 21

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) . . . . . . . 12

*In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016) . . . . . . . . . . . . 26

*In re Plastic Additives Litig.*, 08-3358, 2009 WL 405522 (3d Cir. 2009) . . . . . . . . . . . . . . . . . 27

*In re: Prudential Ins. Co. Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 19, 21, 27

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Schuler v. The Medicines Co.*, 14-cv-01149(CCC), (D.N.J. June 24, 2016) . . . . . . . . . . . .  20-21

*Spokeo v. Robins,* 136 S. Ct. 1340 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . .. . . . . . . . 22n.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Walsh v. Great Atlantic and Pacific Tea Co.*, 726 F.2d 956 (3d Cir. 1983) . . . . . . . . . . . . . . . 19

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . 12, 13, 15

*Washington v. CSC Credit Services. Inc.*, 199 F.3d 263 (5th Cir. 2000) . . . . . . . . . . . . . . . . . 21

*Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **Statutes and Rules**

The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Plaintiff Shabani Stewart, for herself and the classes certified in this matter respectfully moves the Court to grant Final Approval of the class action settlement in this matter, in the form of the Proposed Final Approval Order submitted herewith. Defendant Early Warning Services, LLC ("EWS") does not object to this motion.

## I.     INTRODUCTION

By Order dated February 21, 2020, the Court granted preliminary approval of the class action Settlement Agreement reached in this matter [ECF 41]. The Court's Preliminary Approval Order, for purposes of settlement, certified two classes; appointed named Plaintiff as class representative; appointed Posner Law PPLC as class counsel; appointed JND Legal Administration LLC ("JND") as settlement administrator; ordered the means by which notice of the Settlement Agreement was to be provided to class members; and set forth the requirements for class members to opt-out or object to the Settlement Agreement. Pursuant to the Court's preliminary approval order, individual notice of the case and settlement was sent by email or U.S. Mail to 180,135 class members. Ninety percent of the class notices were successfully delivered (*i.e.*, not returned undeliverable); 25 class members requested to be excluded from the Settlement; and two class members submitted objections to the Court. As set forth more fully below, and as Plaintiff previously argued in support of preliminary approval of the Settlement Agreement [ECF 39], the Settlement Agreement provides important benefits to consumers under the Fair Credit Reporting Act, 15 U.S.C. §§1581 *et seq.* (the, "FCRA"). The Settlement satisfies the requirements of Fed. R. Civ. P. 23, and is a fair and reasonable settlement under the factors set forth for evaluating class action settlements in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Accordingly, Plaintiff respectfully moves the Court for final approval of the class action settlement reached in this case.

1

## II.    PROCEDURAL BACKGROUND

(a)    On March 7, 2018, Plaintiff filed an action styled as *Shabani Stewart, et al. v. Early Warning Services, LLC* in the United States District Court for the District of New Jersey (Civil Action No. 2:18-cv-03277-CCC-SCM), alleging, among other things, that EWS failed to comply with the Fair Credit Reporting Act [ECF 1].

(b)    On May 29, 2018, EWS filed an Answer to Plaintiff's Complaint, denying it violated the FCRA or otherwise harmed Plaintiff [ECF 5].

(c)    On November 20, 2018, Plaintiff filed her First Amended Complaint, alleging EWS violated § 1681g of the FCRA, 15 U.S.C. § 1681g [ECF 20].

(d)    On December 17, 2018, EWS filed its Answer to the First Amended Complaint, denying it violated the FCRA or otherwise harmed Plaintiff [ECF 24].

(e)    Between August 2018 and April 2019, the parties completed substantial written discovery, including document productions and non-party discovery.

(f)    On June 4, 2019, the parties conducted an arms-length, contentious, lengthy, and complicated in-person mediation section with the Honorable Diane Welsh (Ret.) in Philadelphia, PA.  Judge Welsh is a well-respected mediator with substantial experience in mediating disputes arising under the FCRA.  At the conclusion of the mediation session, the parties reached an agreement in principle to settle the case. [ECF 32]

(g)    Thereafter, and until the time a final draft of the Settlement Agreement was agreed upon, the Parties engaged in ongoing negotiations as to numerous provisions in the Settlement Agreement, including, *inter alia*, with respect to the process changes at EWS under the Settlement Agreement, class members' release of claims under the Settlement Agreement, and the provisions for providing notice to class members of this action.

2

(h)     On December 19, 2019, Plaintiff filed an unopposed motion seeking preliminary
        approval of the Parties' Settlement Agreement [ECF 39].

(i)     On February 21, 2020, following Plaintiff's unopposed motion, the Court granted
        preliminary approval of the Settlement Agreement, preliminary certification of the
        settlement classes, and approved the Parties' proposed plan to provide notice of this
        action and the Settlement Agreement to Class members [ECF 41].


### III.     SUMMARY OF THE SETTLEMENT AND PRELIMINARY APPROVAL

*1.  The Claims*

Two claims are at issue in this case.  *See generally*, ECF 20 (First Amended Complaint).
The FCRA requires that, "every consumer reporting agency shall, upon request.... Clearly and
accurately disclose to the consumer [a]ll information in the consumer's file at the time of the
request."  15 USC § 1681g(a).  EWS is a consumer reporting agency under the FCRA insofar as
relevant to this action.[1]  Plaintiff alleges that when she and putative class members requested
disclosure of their files from EWS:

- EWS responded by providing a "summary" disclosure of the consumer's file, with an
  option to further request the complete file.  Plaintiff alleges this violates the FCRA's
  requirement that "**all** the information" be disclosed to the consumer "upon request."

- EWS's internal records that a consumer committed alleged "fraud," was disclosed without
  using the word "fraud;" rather, EWS disclosed to the consumer a record of "unauthorized
  or prohibited" conduct.  Plaintiff alleges this, too, violated the FCRA requirement that
  "all" information in the consumer file be disclosed.

---

[1] See, Answer to FAC at ¶9 (ECF 24).

EWS denies all liability. [SA § 1(i) (at ECF 39-4)].  EWS contends, inter alia, its disclosures were sufficient under the FCRA; that any violation (which it denies in any event) was not committed *willfully* within the meaning of 15 U.S.C. § 1681n, and accordingly, neither Plaintiff nor class members are entitled to statutory damages; and EWS contends that, if litigated, the elements of Fed. R. Civ. P. 23 would not be satisfied.

   2.   *The Classes*

The Court's Preliminary Approval Order certified two classes for purposes of settlement, corresponding to two sets of claims at issue in this case [ECF 41 p. 3 ¶1]:

> The (b)(2) Class, defined as (SA § 1): all natural persons residing in the United States who, from March 7, 2016 through the date of Preliminary Approval, requested from EWS the contents of their file maintained by EWS, where in response thereto, EWS provided to such consumer a "Summary File Disclosure."  Excluded from the (b)(2) Settlement Class are individuals (a) who have previously released his or her claims against EWS, (b) who had a record of a match in the Internal Fraud Prevention Service and (c) the Judge overseeing the Litigation.

> The (b)(3) Class, defined as (SA § 1): all natural persons residing in the United States who, from March 7, 2016 through the date of Preliminary Approval, requested from EWS the contents of his or her file maintained by EWS, where EWS had, in such consumer's file, at least one Fraud Record, where EWS in response to such request, provided a file disclosure to such consumer but where such file disclosure did not use the term "fraud."  Excluded from the (b)(3) Settlement Class are individuals (a) who have previously released his or her claims against EWS, (b) who had a record of a match in the Internal Fraud Prevention Service and (c) the Judge overseeing the Litigation.

The classes are ascertainable.  *See*, *Byrd v. Aaron's Inc.*,784 F.3d 154, 163 (3d Cir. 2015) (holding class certification requires an "ascertainable" class).  By definition, each class member requested his or her file from EWS, and in so doing, provided identifying information, allowing EWS to identify the members of the classes.  EWS timely provided class lists to JND identifying class members for each of the classes.  [Keough Decl. ¶¶ 6-8].  Specifically, there are:

| Class | Number of Consumers |
|---|---|
| Members of the (b)(2) Class | 126,922 |
| Members of the (b)(3) Class | 1,425 |
| Members of both (b)(2) Class and (b)(3) Class | 51,788 |

3.  *Benefits Under the Settlement Agreement[2]*

**Cash contribution**.  Under the Settlement Agreement, EWS pays $4.25 million.  Of this, $3,975,000 is allocated to the (b)(3) Class [SA § 5.1.1].  If the Settlement receives final approval, these funds will be distributed to (b)(3) Class members, after deducting settlement administration costs and any Court approved attorney fees and individual award to named Plaintiff.  In the event the Court approves all requested fees and costs allocated to the (b)(3) Class, each member of the (b)(3) Class who did not opt out should receive approximately $58.77 as follows:

| Entry | Amount (allocated to (b)(3) Class) |
|---|---|
| Gross (b)(3) Settlement Fund | $3,975,000 |
| *Less Costs, Subject to Court Approval* | |
| *Attorney fees allocated to (b)(3) Class* | *($740,000)* |
| *Class administration Costs for (b)(3) Class* <br> *$36,379.75 incurred to date, plus $68,998.00 Estimated Future* | *($105,377.75)* |
| *Incentive award to Named Plaintiff* | *($3,750)* |
| ***(Total costs allocated to (b)(3) Class)*** | ***($849,127.75)*** |
| Net (b)(3) Settlement Fund (Gross *minus* Costs) | $3,125,872.25 |
| Total (b)(3) Class Size | 53,213 Consumers |
| (b)(3) Opt Outs | 25 |
| (b)(3) Class Members who did not Opt Out | 53,188 Consumers |
| Pro rata payout to (b)(3) Class Members (Net Settlement fund *divided by* 53,188) | $58.77 |

---

[2] The Settlement Agreement has previously been filed with the Court.  See ECF 39-4.

There is no requirement that any class member submit any form to receive payment, and no amounts of the $3,975,000 revert to EWS.

The remaining cash component of up to $275,000 is allocated to the (b)(2) Class [SA § 6.1.1], to cover attorney work and other costs for the benefit of the (b)(2) Class.  Payment from the (b)(2) Settlement Fund is calculated as:

| Entry | Amount (allocated to (b)(2) Class) |
|---|---|
| Gross (b)(2) Settlement Fund | $275,000 |
| *Less Costs, Subject to Court Approval* | |
| *Attorney fees allocated to (b)(2) Class* | *($185,000)* |
| *Class administration Costs for (b)(2) Class $64,379.95 incurred to date, plus $12,428.00 Estimated Future* | *($76,807.95)* |
| *Incentive award to Named Plaintiff* | *($3,750)* |
| **Total costs allocated to (b)(2) Class, to be paid from the (b)(2) Settlement Fund** | **$265,557** |

Pursuant to the Settlement Agreement, EWS will fund the (b)(2) Settlement Fund to cover the court approved fees and costs.  While (b)(2) Class members will not receive cash payment, EWS has agreed to meaningful process changes for the (b)(2) Class's benefit, described immediately below.

To the extent there are excess funds in the Settlement funds after distribution to class members and approved fees and costs, these will go to the National Endowment for Financial Education, a non-profit corporation located at 1331 17th Street, Suite 1200, Denver, CO 8020, as a *cy pres* recipient.

**Process changes**.  EWS will change its processes and procedures with respect to both the (b)(2) and (b)(3) Class claims.  Specifically, EWS will no longer provide "summary" file

disclosures, but rather a complete file disclosure on the consumer's first request, and EWS will use the word "fraud" when disclosing records of alleged fraud to consumers.  [SA §§ 5.6, 6.6].[3] The process changes are an extremely significant part of the Settlement Agreement, and for Plaintiff, they represent a key achievement of this case.

4.   *The Limited Scope of the Release under the Settlement*

In return for the benefits provided under the Settlement Agreement, class members provide a limited release to EWS.  Specifically, (b)(3) Class members release the following claims [SA §5.11]:

> As of the Effective Date, all members of the (b)(3) Class fully, finally, completely, and forever release and discharge the Released Persons from any and all Claims, Liabilities, Proceedings, and Relief that arose on or before the Effective Date and that any (b)(3) Class Member ever had, now has, or may have in the future which:
>
> - are based upon or related to the content, form, manner or nature of the consumer disclosure provided to the (b)(3) Class Member in response to his or her request to EWS for the contents of the his or her file; or
>
> - arise under 15 U.S.C. § 1681g[4] or any FCRA State Equivalent. ("(b)(3) Released Claims").

---

[3] SA § 5.6 provides:

> Defendant has implemented, and shall abide by, the following process change:  Defendant has revised the language used in a disclosure provided to a consumer under 15 U.S.C. § 1681g when disclosing a Fraud Record to ensure that it is consistent with the information provided to inquirers of the Shared Fraud Database, including using the term "fraud" as appropriate to in insure consistency.

SA § 6.6 provides:

> Defendant has implemented and shall abide by the following process changes:  Defendant will provide a single file disclosure in response to a consumer request for a disclosure under 15 U.S.C. §1681g, which disclosure will include all information maintained in the consumer's file that is used in a product or service that is subject to the FCRA.

[4] 15 USC § 1681g is the provision under which Plaintiff sues herein, requiring a consumer reporting agency to clearly and accurately disclose the contents of consumer files upon request.

(b)(2) Class members release claims against EWS pertaining to file disclosures or 15 USC § 1681g(a) alleging a <u>willful</u> FCRA violation, and hence, statutory damages, and further waive the right to bring a class action against EWS for claims pertaining to file disclosures or 15 USC § 1681g(a).  Thus, SA § 6.10:

> As of the Effective Date, (b)(2) Relief Class Members fully, finally, completely, and forever release and discharge the Released Persons from any and all Claims, Liabilities, Proceedings, and Relief under (i) 15 U.S.C. §1681n for willful violation of the 15 U.S.C 1681g or any claims based upon or related to the content, form, manner or nature of consumer disclosures provided to the (b)(2) Class Member in response to his or her request to EWS for the contents of his or her file or (ii) any FCRA State Equivalent requirements regardless of whether such FCRA-Equivalent utilizes the term "willful" for violation of the FCRA State Equivalent to 15 U.S.C 1681g or related to or based upon the content, form, manner or nature of consumer disclosures provided to the (b)(2) Class Member in response to his or her request to EWS for the contents of his or her file.
> …
> The (b)(2) Class Members do not release and discharge, but instead preserve, the right of a (b)(2) Class Member to file an individual lawsuit under either 15 U.S.C. § 1681o or an FCRA-Equivalent for actual damages for an alleged violation of 15 U.S.C. § 1681g, subject to the waiver of the class action procedural device described [below]
> …
> The Plaintiff and Stewart (b)(2) Class Members waive their right to pursue, in the future, any Claims, Liabilities, Proceedings, or Relief against the Released Persons using the class action procedural device, as a mass action, a collective action, a private attorney general action or through any other non-individual mechanism, to the extent that the Claim, Liability, Proceeding, or Relief alleges a violation of 15 U.S.C. § 1681g (or any FCRA State Equivalent) or is related to or based upon the content, form, manner or nature of consumer disclosures provided to the Stewart (b)(2) Class Member in response to his or her request to EWS for the contents of his or her file.  This waiver includes any Claims, Liabilities, Proceedings, or Relief under 15 U.S.C. § 1681o (or any FCRA State Equivalents).

As set forth above, (b)(2) Class members preserve the right to bring claims against EWS for actual damages arising out of the alleged (b)(2) Class violations.  Importantly, **all** class members

preserve all rights to bring claims against EWS pertaining to the accuracy of their EWS files and EWS's process's for investigating consumer disputes.

    *5.  Settlement Administration*

Pursuant to the Settlement Agreement, amounts from the Settlement Funds contributed by EWS are to be deducted for payment to JND for class administration expenses.  JND has detailed its fees incurred to date and estimated future fees, all allocated between the settlement classes. See, Keough Decl. ¶¶ 21-22.   Specifically, on behalf of the (b)(2) Class, JND has incurred $64,379.95 to date and anticipates a further $12,428 in costs (total: $76,807.95); on behalf of the (b)(3) Class, JND has incurred $36,379.75 to date and anticipates a further $68,998 (total: $105,377,75).  The Court should approve these costs.  See, Proposed Order submitted herewith at ¶¶ 10(c), 11(c).  JND is an experienced and reputable class administrator, whose fees include costs for postage (both for notice and settlement checks), printing, and other aspects of the class notice plan and settlement administrator.   As class administrator, JND's professionalism and experience has provided valuable assistance in facilitating the settlement process.

## IV.    NOTICE TO CLASS MEMBERS AND CAFA NOTICE

Pursuant to the Court's preliminary approval Order, the Parties implemented the plan of notice to class members through settlement administrator JND Legal Administration LLC ("JND"). *See*, Declaration of Jennifer M. Keough, Chief Exeutive Officer of JND, ¶¶ 9-16.  JND timely sent email notice and mail notice to all class members; in 10% of cases notice was returned undeliverable, indicating an implied 90% successful delivery rate.  Specifically, JND sent individual notice as follows:

**Email Campaign**[5]

- (b)(2) Class Notice emailed to 85,915 (b)(2) Class members (of which 6,757 were returned undeliverable);

- (b)(3) Class Notice emailed to 1,196 (b)(3) Class members (of which 31 were returned undeliverable);

- Combined (b)(2) and (b)(3) Class Notice emailed to 37,713 (b)(2) and (b)(3) Class Members (of which 2,802 were returned undeliverable).

For all class members whose emails returned undeliverable, and for all class members for whom there was no record of an email address, JND sent individual notice as follows:

**Mail Campaign**[6]

- (b)(2) Class Notice mailed to 47,767 (b)(2) Class members (of which 16,692 were returned undeliverable);

- (b)(3) Class Notice mailed to 260 (b)(3) Class members (of which 56 were returned undeliverable);

- Combined (b)(2) and (b)(3) Class Notice mailed to 16,877 (b)(2) and (b)(3) Class Members (of which 6,758 were returned undeliverable).

Additionally, in compliance with the terms of the Settlement Agreement, JND maintained a dedicated settlement website and toll-free information number.  JND recorded 22,597 unique visitors to the website who registered 82,466 page views, and and collectively more than 4,200 calls to the toll-free number.  [Keough Decl. ¶¶13-16.]

**CAFA Notice**

As required by the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715, notice of the Settlement Agreement and documentation pertaining thereto was timely provided to appropriate federal and state officials.  No objections have been received.  JND Decl. ¶¶ 4-5.

---

[5] See, Keough Decl. ¶¶ 9-10 and *id*. n.3.

[6] See, Keough Decl. ¶¶ 11-12 and *id.* n.4.

**V.     THE SETTLEMENT MEETS THE REQUIREMENTS OF RULE 23(a) AND RULE 23(b)**

A class action may be certified where all elements of Rule 23(a), plus at least one subsection of Rule 23(b), are satisfied.  *See*, Fed. R. Civ. P. 23(a) and R. 23(b).  The classes set forth in the Settlement Agreement and preliminarily certified by the Court meet these requirements.

**A.   The Classes Meet the Requirements of Rule 23(a)**

Rule 23(a)(1) ("Numerosity").  There are **126,922** consumers exclusively in the (b)(2) Class; **51,788** consumers who are members of both the (b)(2) Class and the (b)(3) Class; and **1,425** Consumers who are exclusively in the (b)(3) Class.  Keough Dec. ¶ 7.  Numerosity is easily satisfied.  *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984) (92 class members); *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (as few as 40 class members).

Rule 23(a)(2) ("commonality").  Commonality requires that class claims, "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) ("share at least one question of fact or law with the grievances of the prospective class.") (internal quotations omitted).  Here, class member claims depend upon common legal and factual issues and contentions:

- With respect to the (b)(2) Class, the common issues of fact and law are EWS's uniform practice and procedure to provide a "Summary Disclosure," with the option

to request a complete file disclosure, in response to consumer file disclosure requests, and whether such practice complied with 15 USC § 1681g(a).

- With respect to the (b)(3) Class, the common issues of fact and law are EWS's uniform practice and procedure to disclose "fraud" records without using the word "fraud," but rather, "unauthorized or prohibited" conduct, in response to consumer file disclosure requests, and whether such practice complied with 15 USC §1681g(a).

The Parties are aware of no individualized issues which might otherwise prevent certification of the classes.

Rule 23(a)(3) ("typicality").  Typicality requires that named Plaintiff's claims be typical of class members'.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).  The typicality requirement is, "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re: Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998).  A claim can be "typical" without being identical.  *See, General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982); *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1998).  The standard for typicality is a "low threshold," and, "[i]f the claims of the named plaintiffs and putative Class Members involve the same conduct by the defendant, typicality is established." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).

Plaintiff's claims are typical of class member claims, in that Plaintiff's claims assert the same violations of the FCRA as would any class member, and seeks the same statutory damages and equitable relief under the FCRA as would any class member arising therefrom.  *See generally*, First Amended Complaint at ECF 20.  Plaintiff alleges she requested her file

12

disclosure from EWS, and received a "Summary Disclosure" in response.  Plaintiff alleges she had a record of alleged "fraud" maintained by EWS, and received a disclosure of a record of "unauthorized or prohibited" conduct in response.  EWS's defenses as to Plaintiff's claims are also typical of its defenses as to the claims of class members.  Accordingly, typicality is satisfied.

Rule 23(a)(4) ("Adequacy").  This requirement is twofold: (1) It establishes the adequacy of counsel's skills, qualifications, and experience, and (2) assures the interests of Plaintiff and counsel are not in conflict with the interests of class members.  *See, Prudential*, 148 F.3d at 312; *In re Warfarin,* 391 F.3d at 532.  Plaintiff is adequate to represent each of the classes, and has retained competent and experienced counsel to do so. Plaintiff's counsel is experienced in handling complex litigation, in actions under the FCRA, and has been appointed class counsel in FCRA class actions, including a certified class action against EWS.  Posner Dec. ¶¶ 4-6.  Neither Plaintiff nor Plaintiff's counsel has any interests in conflict with their representing the classes set forth above.  *See,* Posner Decl. ¶¶ 7-9.

## B.  The elements of Rule 23(b) are Satisfied.

**The (b)(2) Class**.  The (b)(2) Class satisfies Fed. R. Civ. P.  23(b)(2) because EWS's process and procedures for consumer disclosures under the FCRA, "apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  In *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015), a Rule 23(b)(2) settlement-only class was certified and upheld on appeal, on grounds process changes under the FCRA constituted injunctive relief under Rule 23(b)(2): "what (b)(2) Class members receive… is not monetary but purely injunctive relief – a fundamental change in the product."  *Id.*, 807 F.3d at 607.  The Court held (*Id.*, 807 F.3d at 609) (internal quotations

omitted):

> this is a paradigmatic Rule 23(b)(2) case: The meaningful, valuable injunctive relief afforded by the Agreement is indivisible, benefitting all members of the (b)(2) Class at once.

Here, as part of the Settlement Agreement, EWS has undertaken a change to its processes and procedures for the disclosure of consumer files upon the consumer's request.  Specifically, subject to the provisions of the Settlement Agreement, EWS will provide a single, complete, file disclosure to consumers upon their first request, rather than provide a "summary" file disclosure with the option to request a complete file disclosure.  This constitutes, as *Berry* reasoned, equitable relief affecting the (b)(2) Class as a whole, meeting the requirements for certification under Rule 23(b)(2).

(b)(2) Class members waiving their claims to *statutory* damages under the Settlement Agreement is consistent with certification of an injunctive relief class.  A waiver of statutory damages under the FCRA is "incidental" to the process change constituting the injunctive relief. *Berry*, 807 F.3d at 609.  *Berry* (*id.*) reasoned:

> There are, to be sure, individualized monetary damages claims at issue here – those for actual damages under the FCRA – but those claims, as the district court emphasized, are <u>retained</u> by the (b)(2) Class members. In contrast, the monetary claims released – those for statutory damages – "flow directly from liability to the class as a whole" on the same set of claims underlying the injunctive relief, making them non-individualized…

Here, as in *Berry*, the Settlement Agreement <u>retains</u> (b)(2) Class members' individual claims for <u>actual</u> damages.  SA § 6.10 ("do not release and discharge, but instead preserve, the right… to file an individual lawsuit… for actual damages.")  Accordingly, certification under Rule 23(b)(2) is appropriate.

**<u>The (b)(3) Class</u>**.  The (b)(3) Class satisfies the elements of Rule 23(b)(3) of the Federal

Rules of Civil Procedure.  Class certification is appropriate under Rule 23(b)(3) where: (i) common questions of law or fact predominate over individual questions; and (ii) where a class action represents a superior method for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  The predominance requirement, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 624.  The superiority requirement, "balance[s] in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin*, 391 F.3d at 533-34 (internal quotation marks omitted). Particularly in the consumer protection context, uniform practices as to mass numbers of consumers are will satisfy the requirements of Rule 23(b)(3).  *Amchem*, 521 U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

The (b)(3) Class meets the requirements for both predominance and superiority.  The common questions of fact and law which predominate are whether EWS's uniform practice of disclosing a "fraud," record with the language "unauthorized or prohibited" conduct complied with 15 U.S.C. § 1681g(a); Plaintiff's claim for statutory damages under 15 U.S.C. §1681n arising from the same; and EWS defenses pertaining thereto.  A class action is a superior means to adjudicate this controversy because each class member's claim for statutory damages is at most $1,000, rendering individual cases inefficient or uneconomical, and because class members may be unaware of their rights or potential claims under the FCRA.

## VI.    THE SETTLEMENT IS FAIR AND REASONABLE UNDER FRCP 23(e) AND UNDER GIRSH v. JEPSON

As an initial matter, the Court should grant a measure of deference in evaluating whether the

Settlement is fair and reasonable:

> we favor the parties reaching an amicable agreement and avoiding
> protracted litigation. We do not wish to intrude overly on the parties'
> hard-fought bargain. A district court thus is to presume a settlement is
> fair if (1) the negotiations occurred at arms length; (2) there was
> sufficient discovery; (3) the proponents of the settlement are
> experienced in similar litigation; and (4) only a small fraction of the
> class objected.

*In re: Google Inc. Consumer Privacy Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) (internal citations

omitted).  Here, the Parties mediated at arms' length with an experienced and reputable mediator;

counsel for both sides are experienced, and indeed, have litigated a previous FCRA class action

through successful class-wide settlement; ample discovery has established the basic facts of this

case; and only one or two class members, out of more than 180,000, submitted objections to the

Court.   Accordingly, *Google's* criteria are met for deference to the Settlement Agreement.

Plaintiff now turns to the specific requirements of Fed. R. 23(e) followed by the criteria set forth

in *Girsh v. Jepson* for evaluating class action settlements.

   *1.   The Settlement Meets the Requirements of Rule 23(e)*

Rule 23(e)(2) requires that a Court find a class action settlement is, "fair, reasonable, and

adequate after considering whether:

   (A)   the class representatives and class counsel have adequately represented the
          class;

   (B)   the proposal was negotiated at arm's length;

   (C)   the relief provided for the class is adequate, taking into account:

       (i)   the costs, risks, and delay of trial and appeal;

16

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

  (D)  the proposal treats class members equitably relative to each other."

With respect to **sub-section (A)**, the classes have been adequately represented. Class counsel is experienced in FCRA class action litigation and has repeatedly been found adequate to represent classes of consumers bringing FCRA claims, including against EWS specifically. Posner Decl. ¶¶ 4-6. Class counsel has successfully negotiated the $4.25 million Settlement Agreement now placed before the Court, and has prevailed upon EWS to change its processes to benefit consumers. With respect to **subsection (B)**, all negotiations occurred at arms' length. Settlement began at the Court's prompting (ECF 31), and the Parties mediated under the auspices of JAMS and with Hon. Diane Welsh (Ret.) acting as mediator. Judge Welsh is highly regarded and has extensive experience mediating complex and contentious FCRA class actions. Posner Decl. ¶¶ 7-9. With respect to **sub-section C**, the Settlement Agreement provides relief to class members now, rather than continuing to litigate – potentially for years – and the method of distributing benefits to class members is of no moment (EWS will enact process changes, and (b)(3) Class members will receive checks in the mail). Attorney fees sought in a separate motion are well within customary bounds for an FCRA class action, and in any event, the Settlement Agreement is expressly not contingent on any award of fees. With respect to **sub-section (D)**, class members are treated equitably. Each member of the (b)(2) Class receives the same injunctive relief, and each member of the (b)(3) Class is entitled to the same money damages and injunctive relief.

More generally, the Settlement Agreement contains several provisions which support a finding that it is fair and reasonable.  Specifically, as noted above:

- The Settlement preserves class member claims against EWS pertaining to the accuracy of its records and its processes for investigating consumer disputes.  The release is limited in scope to EWS's disclosures to consumers who requested copies of their EWS files;

- The Settlement granted opt-out rights to (b)(3) Class members, and it preserved (b)(2) Class members' rights to sue for any individual actual damages, <u>including for the released claims.</u>  (The only (b)(2) Class claims released were for statutory damages and for claims brought as part of a class action.)

- The Settlement contained an aggressive notice plan, providing for individual notice to be sent to all class members.

These aspects of the Settlement address certain concerns expressed by the Third Circuit concerning a Rule 23(b)(2) settlement class in *In re: Google Inc. Consumer Privacy Litig.*, 934 F.3d 316, 326 (3d Cir. 2019).  There, the Court was troubled that, for a class certified under Rule 23(b)(2) the, "Settlement Agreement purports to release all class member claims, including for damages."  Here, (b)(2) Class members do <u>not</u> release claims for actual damages.  *Google* further questioned whether a Rule 23(b)(2) class releasing money damages might, "require[] a heightened form of notice either under Rule 23(c)(2)(B) or due process tenets."  *Id.*, 934 F.3d at 329.[7]  Unlike *Google*, the Parties in the present case undertook to provide individual notice to

_____

[7] The parties in *Google* availed themselves of the lower standard of notice pertaining to Rule 23(b)(2), which does not require individualized notice to class members, nor any particular content to the notice, but rather, provides, "the Court may direct appropriate notice."  This aspect of the *Google* settlement particularly troubled the Court. *Google*, 934 F.3d at 329 ("the parties… avoided the heightened certification and notice requirements"); *id.*, at 331 ("[b]y seeking

class members, explaining the nature of this action, and including a detailed statement of how to object.

2. *The Settlement Meets the Requirements of Girsh v. Jepson*

Additionally, in the Third Circuit, the fairness of a class action settlement must be evaluated in light of the criteria enumerated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), specifically:

> (1) the complexity, expense and likely duration of the litigation … ;(2) the reaction of the class to the settlement … ; (3) the stage of the proceedings and the amount of discovery completed … ; (4) the risks of establishing liability … ; (5) the risks of establishing damages … ; (6) the risks of maintaining the class action through trial … ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery … ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*See also, Walsh v. Great Atlantic and Pacific Tea Co.*, 726 F.2d 956 (3d Cir. 1983). Subsequent to *Girsh*, the Third Circuit has also suggested that other factors may also bear. *See In re Prudential*, 148 F.3d 283, 323 (3d Cir. 1998). An evaluation of the relevant factors demonstrates that Settlement Agreement is fair and provides adequate relief.

**1. Complexity, expense and likely duration of the litigation**.  This factor weighs decisively in favor of approval, because the settlement requires improved disclosure to consumers *now*, without the duration – potentially years – through continued litigation and appeal.  *See, In re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768,

---

certification under Rule 23(b)(2), the defendant and class counsel avoid the additional safeguards that apply to Rule 23(b)(3) actions.").   In contrast, here the Parties' notice comports with the more stringent requirements of Rule 23(b)(3), for which the court, "must direct… the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

812 (3d Cir. 1995) (favoring immediate benefits to class members over delay and expense of continued litigation).  Without EWS promptly changing its processes and procedures, tens of thousands of additional consumers who requested file disclosures might not know about a "fraud" record in their file, and thus, would be impeded in their ability to dispute its accuracy. All the while, such consumers would find it difficult or impossible to open a bank account, due to "fraud" record in their EWS file which they might not even know exists.  Settling *now*, and securing the improved processes and procedures at EWS, weighs in favor of approval.

    **2. Reaction of the class to the settlement**.  This factor weighs in favor of final approval. Out of more than 180,000 class members – 90% of whom received individualized notice of the settlement – no more than 35 requested to be excluded, and two submitted objections to the Court.  *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *In re: Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("[t]he vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement.")

    **3. Stage of the proceedings and the amount of discovery completed**.  The purpose of this criteria is to, "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant Corp.*, 264 F.3d at 235 (quoting *Gen. Motors Corp.*, 55 F.3d at 813).  Here, the Parties have been litigating for more than two years, and have engaged in document discovery and non-party discovery sufficient to establish the relevant facts of the case. Indeed, in some cases, class action settlements receive final approval with *no* formal discovery at all. *Schuler v. The Medicines Co.*, 14-cv-01149(CCC), (D.N.J. June 24, 2016) [Docket 72 at slip 13] (granting final approval; while there, "was no formal discovery," counsel had, "ample

information to evaluate the prospects of the case"). *Schuler* cited to *In re Nat'l Football League Players Concussion Injury Litig.*, No. 15-2206, 2016 WL 1552205, at *19 (3d Cir. Apr. 18, 2016) where, "the third *Girsh* factor was satisfied where the parties had engaged in informal discovery and ten months of settlement discussions," and accordingly, as the Third Circuit observed, "had developed enough information about the case to appreciate sufficiently the value of the claims." *Schuler*, at slip 14.

4. **Risks of establishing liability.**

The purpose of this factor is to, "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Cendant Corp.*, 264 F.3d at 237 (quoting *Gen. Motors Corp.*, 55 F.3d at 814). The factor weighs the potential outcome if, "the case were taken to trial against the benefits of immediate settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)). Here, each side believes strongly in its position. While Plaintiff believes strongly in her claim, EWS notes its summary file disclosures explicitly provided consumers the option to request a comprehensive file disclosure, and EWS argues its disclosure of "unauthorized or prohibited conduct" was sufficient. Given the, "immediate benefits of settlement," (*Prudential, supra*), this consideration supports approval.

5. **Risks of establishing damages**. This factor weighs in favor of approving settlement. As an initial matter, the Settlement Agreement requires EWS to undertake important process changes to improve its disclosures to consumers – relief that might *never* be obtained, even if Plaintiff *prevailed* at trial. Because the FCRA does not contain any provision expressly authorizing a court to order injunctive or equitable relief, it is not clear that the Court could ever order EWS to undertake process changes in litigation. *See Washington v. CSC Credit Services.*

21

*Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) (no FCRA class-wide injunctive relief, but acknowledging conflicting cases); *Beaudry v. Telecheck Services., Inc.*, 579 F.3d 702, 709 (6th Cir. 2009) (questioning *Washington*); *Berry v. Schulman*, 807 F.3d 600, 610 (4th Cir. 2015) ("[w]e may assume… that the FCRA, which does not provide expressly for a private right of action for injunctive relief, does not permit consumers to seek injunctive remedies.")  That EWS has agreed to the Settlement Agreement – which will be Court ordered and approved upon final approval – provides valuable relief to the classes, compared to the risks of going to trial.[8]

Moreover, to obtain statutory damages for the class, Plaintiff has the heavy burden of showing EWS – a reputable and sophisticated company – *willfully* violated a core provision of the FCRA.  15 U.S.C. § 1681n.  *See*, *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007) (standard for "willful" FCRA violation).  The Third Circuit, in *Cortez v. Trans Union LLC*, 617 F.3d 688 (3d Cir. 2010), construed a "willful" FCRA violation liberally, noting a consumer reporting agency could trigger the statutory damages provision of the FCRA, "by adopting an objectively unreasonable interpretation of the law…" *Cortez* observed the FCRA, "is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." *Id*.  However, *Cortez* involved Trans Union's failure to provide *any indication at*

---

[8] That Plaintiff might not be able to obtain injunctive relief in litigation under the FCRA does not prevent the Court from ordering injunctive relief under the settlement to which both sides stipulate.  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 317 (3d Cir. 2011) (court may "approve a mutually agreed-upon stipulation enjoining conduct ... regardless of whether the plaintiffs could have received identical relief in a contested suit"); *Berry,* 807 F.3d at 610 (approving injunctive relief settlement, notwithstanding, "that the FCRA, which does not provide expressly for a private right of action for injunctive relief, does not permit consumers to seek injunctive remedies.… in the settlement context, 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'")

*all* to consumers that their name appeared on Trans Union's OFAC warning list.[9]  Here, EWS indicated to consumers that their EWS record included "unauthorized or prohibited" conduct; what was missing was the more specific description, "fraud."

6.   **Risks of maintaining the class action through trial**.  EWS vigorously denies the elements of FRCP 23 could be established at all in litigation, let alone maintained through trial. Procedurally, EWS can move to decertify any class, even if Plaintiff were to prevail in initial certification.  Fed. R. Civ. P. 23(c)(1)(c) ("[a]n order that grants… class certification may be altered or amended").  Named plaintiff would have to remain committed to the case through the indefinite future, and issues of commonality and predominance – for classes numbering more than 53,000 and 180,000 consumers, respectively – could easily be litigated.  For example, did all class members expressly request their "complete" files?

7.   **Ability of the defendants to withstand a greater judgment**.  This factor weighs neither in favor nor against approval.  EWS is a consortium of major banks and presumably has resources to withstand judgment; however, there can be no question EWS would fight for years through litigation and appeal against the theoretical exposure of class-wide maximum statutory damages.

8.   **The range of reasonableness of the settlement fund**.  EWS is contributing $4.25 million toward settlement.  This is a significant payment for a consumer protection class action. Moreover, the settlement provides meaningful non-monetary relief in the form of EWS's two process changes.  This factor weighs in favor of approval.

---

[9] An OFAC Alert tells a prospective merchant or creditor that the consumer is on the U.S. Government's OFAC List, which prohibits conducting business with such persons.

23

## VII.   CLASS MEMBER OBJECTIONS SHOULD NOT PREVENT FINAL APPROVAL

Out of more than 180,000 class members, two submitted objections to the Court.  The objections should not prevent final approval.

*1.   Objections Submitted to the Court*

Two objections, or potential objections, have been submitted to the Court.  See, ECF 44, 45.  These objections should not prevent final approval of the Settlement.

**Maxime Djewaye**, of Hagerstown, Maryland writes (ECF 44):

> I subject [sic] to the settlement… I believe that Early Warning Services, LLC didn't protect my personal information.

To the extent this letter is construed as an objection, the objection lacks merit.  Any failure of EWS to protect Ms. Djeway's personal information is outside the scope of the complaint in this action (which has nothing to do with failure to protect information), and is outside the scope of the settlement; Ms. Djeway could pursue any claims for failure to protect her information, insofar as actionable, on her own.   Sections 5.11 and 6.10 of the Settlement release class members' claims pertaining to, "the content, form, manner or nature of consumer disclosures **provided to the [(b)(2) or (b)(3)] Class Member in response to his or her request to EWS for the contents of his or her file**" (emphasis added).  Any improper disclosure EWS made to a third party is outside the scope of this language, and outside the scope of the settlement.

**Patricia Johnson** of Old Bridge, New Jersey, writes [ECF 45]:

> I am writing to you in objection to the settlement…  I have enclosed documents from Chase Bank, Police report… and copies from EWS, Trans Union, and Experian… I was a victim of identity theft.  Someone opened an account in my name and they, Chase Bank, called me saying I owed them money….  I sent everything they requested.  All was reported to police and credit bureaus including EWS.

> I don't know what else is needed.  I am quite sure you will see everything
> is in order.
>
> Thank you in advance.

This letter does not raise any objection to the settlement.  The situation described by Ms. Johnson is simply outside the scope of this case and outside the scope of the Settlement Agreement. Indeed, while the letter does use the term "objection," it is not clear that Ms. Johnson intends to lodge a substantive objection to the settlement.

2.  *Objections Received by Counsel*

Class counsel received a number of letters which claim, or possibly claim, to object to the Settlement Agreement.  See, Posner Decl. ¶ 11; *id.* Exhibit A.  These letters do not conform to the clear requirements of the Court's Order granting Preliminary Approval of the Settlement Agreement, which set forth the requirements for objections [ECF 41 p. 4 ¶6 (adding emphasis)]: "Any members of the Settlement Classes who wish to object to the settlement **must submit an objection in writing to the Clerk of the United States District Court for the District of New Jersey**."  This requirement was clearly conveyed in the class notices sent to class members, which stated objections must be sent to the Court, and provided the address for the Clerk's office at the Courthouse.  (The class notices appear at Exhibit B and Exhibit C to the Keough Declaration submitted herewith.  Each clearly states that class members may object by writing ***to the Court***.)

However, even if the Court should entertain these objections on the merits (which it should not), the objections should not prevent final approval of the settlement.

1.  **Hunter Logan Tierny** of Marietta, Georgia, writes:

> I object due to lack of information about the case and having not being
> wronged in any way.

The first potion of this objection – a "lack of information about the case" – lacks merit. Individual notice of the settlement, pursuant to the Court-approved notice plan, was sent to 90% of class members by mail and email.  Material documents concerning the case – the pleadings, the settlement agreement, motions for settlement approval and attorneys' fees – were all made available on the settlement website, to which the individual notices referred.  Keough Decl. ¶ 13-14.  *See also*, SA §§ 5.3.3(b) and 6.3.3(b) [ECF 39-4 at pp. 15, 33], listing documents to be posted on Settlement Website.  The settlement administrator reports tens of thousands of visits to the settlement website and thousands of phone calls to the settlement toll-free number.

The second portion of this objection – "not being wronged in any way" – similarly lacks merit.  Mr. Tierny and other class members have a potential claim under the FCRA, specifically EWS's failure to comply with 15 USC §1681g, as set forth more fully herein.  The settlement is a *bona fide* settlement of class claims.

To the extent the objection challenges the subject matter jurisdiction of the Court – on grounds Mr. Tierny suffered no "concrete" harm over which the Court may exercise jurisdiction (*see, Spokeo v. Robins,* 136 S. Ct. 1340 (2016)), the objection similarly lacks merit.  The Supreme Court, in *Spokeo*, reaffirmed that the, "failure to obtain information subject to disclosure [by statute] constitutes a sufficiently distinct injury to provide standing to sue." *Id.*, 136 S. Ct. at 1549-50 (internal citations and quotation marks omitted).  *Accord In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 273-74 (3d Cir. 2016) ("[i]ntangible harms that may give rise to standing also include harms that may be difficult to prove or measure, such as unlawful denial of access to information subject to disclosure.") (applying *Spokeo*; internal quotations omitted); *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312 (3d Cir. 2018) (holding failure to disclose required information under the FCRA confers standing to sue under *Spokeo*).  Here,

26

the classes allege EWS failed to provide information that was required by statute, and more specifically, information which the class members had *affirmatively requested* – the contents of their EWS files.  The court has subject matter jurisdiction over such a claim.

To the extent the objection asserts that Mr. Logan personally was not wronged, this is immaterial.  Whether or not an unnamed class member suffered Article III injury is beside the point.

> Article III standing is determined vis-a-vis the named parties. "Once threshold individual standing by the class representative is met, . . . there remains no further separate class standing requirement in the constitutional sense."

*In re Plastic Additives Litig.*, 08-3358, 2009 WL 405522at *4 (3d Cir. 2009) *quoting In re: Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).  Here, named Plaintiff was deprived of the information she requested from EWS, and which she was entitled to receive under the FCRA.

2. **<u>Keicha Burdett</u>** of Covengton, Georgia writes:

> This letter is to my objection.  I wish to object to the settlement... I called Early Warning Services to see if they could have my credit file sent to me from all credit companies.  Experian Equifax & Transunion.  All information was sent on my behalf.

Ms. Burdett's letter does not explain any objection to the class action settlement.  Construing the letter as broadly as possible, if Ms. Burdett is objecting that the settlement should address her claim that EWS failed to provide her with her Experian, Equifax, and Transunion file disclosures, this objection lacks merit.  We are aware of no requirement that EWS provide consumers with their files maintained by another company such as Experian.

3. **<u>Catherine Eaton</u>**, of East St. Louis, Illinoi, writes:

> I object to the settlement …  I don't understand if the court approves the settlement it will be binding on me for what & for what?  I'm not in the membership of the Settlement Class, and I don't have any papers in support of my position.  We have enough problems in this world, one man say there is no problem, the other man said that it is to cause problem.  He just want to be on TV and in the news papers.

If it is true that Ms. Eaton is not in the class, then her objection lacks merit by definition: only class members can object (and in any event, the settlement would not be binding on her).[10]  The settlement has not been pursued for personal gain "TV… newspapers…"), but rather for the interests of the classes.  Posner Decl. ¶ 8.  While counsel is sympathetic to the broad sentiments expressed in the remainder of the letter, it is not a reason to reject the class action settlement.

Ms. Eaton further writes on a copy of the class notice card:

> This is the card they sent me, I couldn't read to good.  I'm eighty years old and blind in my left eye with low sight in my right eye.  Didn't understand all I was trying to read.

The parties provided multiple forms of notice and settlement information to class members under the court-approved notice plan.  A toll free number was available for class members, including the visually impaired, to obtain information by phone, and the settlement website provided extensive information in larger font.

4. **Eaphie Geissel**, represented by counsel Clinton A. Couch, Esq., writes:

> Ms. Geissel objects to the settlement proposed and wishes to opt out of the class in order to pursue her own claim.

This is not an objection.  It is well established, and explicit in the Settlement Agreement (and class notice), a class member cannot both opt-out and object, and any class member who

---

[10] Conceivably, in the event of identity theft, EWS might have a ***record*** that a consumer requested his or her file disclosure – when in fact, the consumer did not make any such request, but rather, an identity thief using the consumer's personal identifying information made the request.  Any such consumer would be outside the scope of the settlement classes, both of which pertain solely to "consumers... who requested" their file disclosures.

purports to do so will be deemed to have opted out.  Moreover, even if the letter is deemed an objection letter, it fails to provide any basis for a purported objection.

     **5.** __Jameelia Matheson__ of Brooklyn, New York, writes:

> I am requesting Mediation.  A Settlement for $59.00 isn't sufficient for such Violation.

This letter nowhere states it is actually an objection.  Moreover, the Parties already engaged in mediation.  For the reasons set forth above at length, the Settlement is fair and reasonable. If Ms. Matheson or any other (b)(3) Class Member suffered damages, they were free to opt out and pursue such claims on their own.

## VIII.   CONCLUSION

     The Court should grant Final Approval of the class action settlement in the form of the proposed Order submitted herewith.


Dated: June 1, 2020


                            **POSNER LAW PLLC**

                            _s/ Gabriel Posner, Esq._
                            270 Madison Avenue, Suite 1203
                            New York, New York
                            Phone: 646-546-5022
                            Email: gabe@PosnerLawPLLC.com
                            _Attorney for Plaintiff and_
                            _Settlement Class Counsel_